## Owens *versus* Myers.

1. The mere purchase by one in possession of land, of an outstanding invalid claim to it, does not render his adverse possession less hostile to the true title, nor divest his title already complete by the statute of limitations.

2. When the purchaser at sheriff's sale is acquainted with an adverse claim of title, it is not the duty of such claimant to proclaim the same at the time of the sale.


ERROR to the Common Pleas of *Greene county*.

This was an ejectment by Peter Myers against John Owens, David Owens, and David Keener, to recover about fifty acres of land.

Peter Myers, the plaintiff, claimed the land in dispute, under a conveyance from Samuel Cleavenger, attorney in fact of Shoemaker and Willis, who held the title from the Commonwealth, by patent dated in 1796. The deed from Cleavenger to Myers was dated February 28, 1842, and recorded March 1, 1842. The evidence was not set out at length on the paper-books; but it was

[Owens v. Myers.]

stated, on the part of the plaintiff, that it was testified that Peter Myers purchased the land from Cleavenger, as attorney, by articles of agreement in 1834. His deed was not recorded till after the record of that of the defendants hereafter referred to.

On the part of the *defendants*, it was shown, that as early as 1803, *Thomas Owens,* their father, entered upon the land in dispute, and took possession of a small improvement, which had been made by a man named Moore. That the elder Owens occupied the land, adversely, until his death in 1833. His children, the plaintiffs in error, remained in possession after his death, and occupied the land at the time of trial.

On the 8th of March, 1836, *John Owens,* one of the defendants, whilst in actual possession of the land, agreed in writing with Cleavenger for the purchase of the *Shoemaker and Willis* title. There was also evidence that there was a parol agreement to the same effect, prior to this date. In pursuance of this agreement, a deed was executed by Cleavenger to the defendants, dated May 11, 1839, recorded Sept. 28, 1840.

It was in evidence, that Cleavenger declared that the land in dispute was intended for the Owens'; that he wished the old man and his children to have the benefit of his improvement.

It was also in evidence, that in 1844, after the alleged purchase by Myers from Cleavenger, the interest of Peter, Thomas, and John Owens (children of Thomas Owens, deceased), in the land in controversy, was levied on and sold by the sheriff to *David Owens,* and that Myers, the plaintiff, admitted that he was present at the sale. There was no evidence that he then objected or gave notice of his claim to the land.

The Court charged the jury, in part, as follows:—

"We may observe, that Owens (plaintiff in error), likewise had an improvement right, *and in fact from the evidence might have held title under the statute of limitations,* if he had not thought proper to acknowledge the title of *Shoemaker and Willis.* We say to you, then, that plaintiff and defendant, having purchased from the *attorney in fact of Shoemaker and Willis,* must entirely rest on these titles, and cannot go into the improvement title, for the purpose of modifying or establishing their rights here. This contract must be decided the same as if both the parties had been strangers to the land, until their purchase from Cleavenger."

In reference to the presence of Myers at the sheriff's sale, the Court charged, that the presence of Myers, and his silence at the sheriff's sale, under the circumstances proved (more particularly if David Owens knew before that Myers claimed the land), would not amount to an estoppel.

It was assigned for error:—

1. The Court erred in charging the jury that "the defendant

[Owens *v.* Myers.]

(below) having purchased from the *attorney in fact of Shoemaker and Willis*, must entirely rest on this title, and cannot go into the improvement title for the purpose of modifying or establishing his rights," and that " this contract must be decided the same as if both the parties had been strangers to the land, until their purchase from Mr. Cleavenger."

2. " That the presence and silence of Myers (the plaintiff below) at the sheriff's sale, would not amount to an estoppel."

*Black*, for plaintiff in error.—It was conceded in the charge, that at the time Owens purchased the Shoemaker and Willis title, he might have held the land under the statute of limitations; but it was argued in the charge, that having purchased the Shoemaker and Willis title, he was bound to rely on it exclusively.    It was contended that the doctrine of estoppel did not apply·to this case, and that the defendants were not precluded from availing themselves of the statute of limitations: 3 *Watts* 125, Paul *v.* Mackay; Blight's lessee *v.* Rochester, 7 *Wheaton* 535; 5 *Cond.* 335.

It was observed that the error complained of probably resulted from overlooking the distinction between a party in or out of possession at the time of the contract.    Had Owens gone into possession under the agreement with Cleavenger, without misrepresentation on the part of the vendor, or mistake as to his own rights, there would, perhaps, be no gainsaying the title under which he entered.    But being an innocent purchaser of the outstanding title of the patentees, and without notice of any prior sale to Myers, and, above all, *in actual possession at the time, under a claim of title impregnable even as to Shoemaker and Willis*, it would be unjust to confine him to a title which had lost all the vitality it ever possessed.

As to the second error assigned, was cited Eply *v.* Witherow, 7 *Watts* 163.    " One who stands by and sees his property sold at sheriff's sale as the property of another person, without giving notice of his title, will thereby be barred from recovering it in ejectment."

The evidence was, that Myers was present at the sale, and gave no notice of his claim, although at that time he held a deed from Cleavenger, which, he maintained, covered the land then selling. It was his duty to make· known his claim in order to affect the purchaser.

*Montgomery*, with whom was *Sayers*, for defendant in error.— It was alleged that one of the Owens' admitted that Myers had purchased *first* and had the first article of agreement, but that their deed was *first* recorded.    It was alleged that Owens did not then allege any claim to the land except through the title obtained· through Cleavenger.

[Owens v. Myers.]

In support of the first error assigned, reference was made to the case of Calhoun v. Cook, 9 *Barr* 228, that *hostility* must be *continuous* as well as *possession;* that. the course of the statute is arrested by an acknowledgment of an antagonist title, and the party may show by his *declarations or acts*, that he does not seek to oppose it. And it is sufficient to prevent its being adverse that the party *intends* to occupy the land subject to the will of the owner. See also Christwell v. Altemus, 7 *Watts* 581; Sailor v. Hertzogg, 4 *Wh.* 259. Again, in Miller v. Keene, 5 *Watts* 349: —"A written recognition of title of a person not in possession of land, and an *offer* to purchase by him in possession, effectually rebuts the allegation of adverse possession, and avoids the effect of the statute of limitations." To suffer the occupant to amuse the *proprietor* with professions of submission, and offers to purchase, would give an effect to artifice which the Legislature never intended to produce. The statute, it has been held, runs not to protect a fraud secretly committed; and why should it run to protect a fraud secretly meditated? In Saylor v. Hertzogg, 2 *Barr* 184, it is said a parol disclaimer of hostile possession has the same effect, whether it was made by a colorable owner or an avowed intruder.

It seems, from the authorities cited, that *an offer to purchase* by one in possession, made to the owner of the legal title, *unaccompanied by any claim of title for himself, takes away all intention of holding adversely.* Granting this to be so, why should not an absolute sale, unaccompanied with *claim of title*, have the like effect? Both the plaintiff and defendant here were purchasers from Shoemaker and Willis, without evidence to show that either of them claimed adversely to that title.

As to the *second* point was cited the case of Patterson v. Lytle, 1 *Jones* 53 *et seq.* One is only prevented by alleging the truth, when his silence has been the inducement to action by the other party, which would result in loss if the first party was permitted to gainsay what he had induced the other to believe by his *acts*. Silence will postpone only where silence is *a fraud:* 2 *Pa. Rep.* 19. The question is, did Myers induce action of the other party: McCormick v. McMurtrie, 4 *Watts* 192. There can be no fraud, says Justice Bell in Commonwealth v. Moltz, 10 *Barr* 531, where the purchaser or other actor was or ought to have been acquainted with the subject of his action, or, having means of knowledge, neglected it. See also 17 *Ser. & R.* 383, to the same effect.

The opinion of the Court was delivered, December 20, by

Lowrie, J.—There seems to have been evidence that Owens had held this land, or a part of it, and perhaps adversely to the true owner, from 1803 up to 1839, and that then he got a deed from the original owner, who had in 1834 sold the land to Myers. It

[Owens *v.* Myers.]

is on such a state of the evidence, in an action by Myers against Owens for the land, that the Court instructs the jury that Owens might have claimed the land by the statute of limitations if he had not acknowledged the original title by purchasing it; and that, on account of this recognition, he must rely solely upon his purchase.

We are not able to understand otherwise the charge of the Court; and surely this is wrong. If he had a good title in any way, and then bought a bad one, by what logic can this work a forfeiture of the good one? The fact of his purchase may be evidence that until then he had no valid title; but it does not prevent him from showing and relying upon the contrary. Even if his adverse possession had not perfected his title when he bought the Shoemaker title, does that purchase, under the circumstances, prevent it from ever becoming perfect? Suppose it is an acknowledgment of the Shoemaker title; it acknowledged no more than that it was worth getting; and as to it there can be no question of adverse possession, for he has it by deed.

But admit the acknowledgment. It was a mistake; for the title was not Shoemaker's, but Myers's, if it was not Owens'. Myers was not a privy to the transaction, and can claim no right under it. It did him no harm, and he can claim from it no advantage. Even if the statute of limitations had not run out at the time of the purchase, that fact did not stop it from running as to Myers, being itself an act of hostility to him. The result is, that the mere purchase of an outstanding invalid claim to land does not make an adverse possession less hostile to the true title, nor divest a title already complete under the statute of limitations.

The other parts of the case are without error.

Judgment reversed and a new trial awarded.